Earle, J.,
delivered the opinion of the court.
The question concerning the territorial extent of the juris-, diction of Justices of the Peace seems to be presented here for the first time; as there has been some diversity of opinion, and some also of practice, it is well enough to have it adjudicated, so as to produce uniformity and prevent conflict. It is a question of authority, to be decided by research, rather than of principle, to be illustrated by argument. Justices of the peace are frequently mentioned in the earlier colonial acts, and seem to be recognised as public officers of acknowledged authority and jurisdiction. By the Act of 1712, P. L. 99, 4th sec., it is enacted that “ the justices of the peace in this Province shall have the power of justices of the peace in the kingdom of England.” The institution was derived from the mother country, and we must look there for information concerning the nature and mode of their appointment, and the extent of their jurisdiction. Burns, in his Justice, says, “justices of the peace at this day are of three sorts. 1st. By Act of Parliament, as the Bishop of Ely and his successors, *154 the Archbishop of York, &c., 27 H. 8, c. 24. 2d. By charter or grant of the king under the great seal — as mayors and the chief officers in divers corporate towns. 3d. By commission.” It is of this last sort only that we need to inquire; and although conservators of the peace were known and recognised by the laws of England in sundry superior and inferior public officers of the kingdom, designated by other appropriate titles, as early as the conquest, yet justices of the peace as such, are said to have their origin in the statute of 1 Ed. 3, c. 16, by which it was ordained that “in every shire of the realm, good men and lawful, (which were no maintainers of evil, nor barretors in the country,) should be assigned to keep the peace.” By 4 Ed. 3, c. 2, it is likewise ordained, “ there shall be assigned good and lawful men in every county to keep the peace.” By 18 Ed. 3, s. 2, it is enacted, “that two or three, of the best reputation in the counties, shall be assigned keepers of the peace by the king’s commission.” Viner’s Abridgement, 4, 5. But the stat. of 36 Ed. 3, c. 12, is said by Dalton to be the first statute that nameth them justices of the peace. The mode of appointment, therefore, in England, is by commission from the king, as such it has always been from their first institution. To ascertain the nature and extent of the appointment, it is necessary that we should look into the commission. The form of this instrument, as adopted under the statute of 1 Ed. 3, was altered and enlarged, in pursuance of' the several statutes passed in the reign of the same sovereign, and continued to be still further enlarged from time to time, under succeeding princes, until the 30th year of Elizabeth, when it was become so cumbersome it was necessary to reform it. This was done by a general conference of the judges, at the suggestion of the Chief Justice of the King’s Bench, and a form of commission framed, which being approved by the Chancellor, was adopted, and with little alteration, continued to be used. It may be found in Dalton’s J. 16, in Latin — and in Burns’s J. 7, in English. I quote from the latter, which is a literal translation of the former — “George III., &c.; to A, B, C, D, &c., Know ye, that we have assigned you, jointly and severally, and every one of you, our justices to keep our peace in our county of "W. — and keep and cause to be kept, all ordinances and statutes for the good of the peace, for the preservation of *155 the same, and for the quiet rule and government of our people, made in all and singular their articles in our said county —as well within liberties, and without, according to the form, force, and effect of the same.” Considering together the statutes providing for the appointment of justices to keep the peace, or of the peace, and looking at the phraseology of the statutes, “ in every shire good men and lawful,”- — “ good men and lawful in every county,” — “two or three of the best reputation in the counties,” shall be designated to keep the peace therein, and comparing these with the commission itself, which is the evidence of their authority, as also of its extent, the conclusion is unavoidable, that the justices should reside in the county, and that their power and. jurisdiction do not extend beyond it. The being good and lawful men in the county, and of the best reputation, they are assigned to keep the peace in the said county, and to keep, or cause to be kept, all ordinances and statutes for the good of the peace, and for the preservation of the same, &c., in the said county. Such is the obvious interpretation of the statutes and commission, without regard to precedent. If we look into authorities, we shall be confirmed in this construction. On this head I will first quote Dalton, whose “County Justice,” published in 1705, is the ground work of all subsequent treatises; and here, says he, p.' 24, “ I must further put justices of the peace in mind that their authority and power is limited, to be by them exercised only within the county ór counties where they be in commission, and yet in such county or counties the justices of the peace of the county must not intermeddle in any city there, or corporate town, (háving their own proper justices of peace by king’s charter or commission,) except such county justice shall also be in commission in such city or town corporate: but in other corporate towns which have not their proper justices of peace, as also in all liberties and franchises (within the county) which have the return of writs but have not their proper justices — there the justices of the peace of the county ought to execute their authority, and that by the words of their commission.” Again, says he, “ if a parish shall extend into two or more counties, or if part thereof shall lie within the liberties of any city or town corporate, (which have their proper justices,) and part without, then as well the justices of the county as the justices of such city or town cor *156 porate, shall intermeddle with their own proper and distinct limits and bounds, &c., within so much of the said parish, &c., as lieth within their several liberties and limits, and not invade or deal in other jurisdictions; for it shall be against law and reason, where officers and jurisdictions are several, that the one should intermeddle with the jurisdiction of the other.” And so also says Burná, (in his commentary on the commission already quoted from his book,) “here are two considerations: one is that the justice cannot act when he is out of the county: and the other is, that when he is in the county, he can act for that county only, and his power ex-tendeth to no other.” And in order to remedy an evil that necessarily grew out of this last restriction, where one against whom a warrant had issued in a particular county for an offence there, escaped and fled into another, where the warrant did not extend, the stat. 24, G 2, c. 55, was passed, providing a mode by which the warrant could be made effectual in the county to which the accused had fled, by a justice there indorsing his name thereon, proof on oath of the handwriting of the issuing justice being furnished. Such a statute could not have been deemed necessary if a warrant could be executed out of the county by virtue of its original authority. In Vin. Abr. 11, a case is reported to this effect; “ if a justice of peace of one county pursues one into another county for felony done in the county where he is justice, and there takes him, it is held that he is his prisoner in the county where he takes him, and he ought to imprison him there, and he cannot carry him to jail in the county where he did the felony, for he is not his prisoner there, because his pursuit in such a case is not material, and then he has nothing to do in the county where he took him, any more than any other person; and this proves that a justice of peace in one county has no authority in another.” In Helin vs. Benhurst, the judges came to the same resolution, Cro. Car., 211. “There is a difference where a justice doeth an act to compel another to perform — as to imprison any for non-performance, or to command one for any offence to be imprisoned, such acts cannot be done in any place but where his jurisdiction extends.” From these authorities it is clear, that in England the jurisdiction of the justices of the peace is local — limited to the *157 county, city, or corporate town, in which and for which be is appointed and commissioned. In South Carolina, I think it has not been the practice at any time to commission justices of peace, at least since the revolution, although both Simpson and Grrimke have furnished us with the form of a commission, modelled on that I have already quoted from Burns. The 2d sect. of 6 art. of Const. of 1790, provides “ all other officers (certain officers having been named in the 1st sect, to be elected by joint ballot) shall be appointed as they hitherto have been, until otherwise directed by law.” And the 7th sect, of the ordinance appended to the constitution provides, “that the Legislature at'their next meeting shall-proceed to the election of justices of the peace throughout the State, &c., fixed and that in future, all commissions of the peace expire at periods, to be declared by law.” The Acts of Assembly, 1791, Faust, 150, provides that justices of the peace in each county shall be appointed as heretofore, not exceeding five in number : and who shall continue in office for the space of four years. Then follows the Act of 1799, Eaust 2, 259. This ordains that all and every appointment of justices of quorum and of the peace hereafter to be made, shall continue for four years, and from thence for thirty days after the end of the session of the Legislature at, during, or next after the time at which such appointment shall expire. By the Constitution, therefore, the Legislature has the appointment of justices: and they continue four years in office; thus commissions of the peace expire at the end of four years, the term affixed by law. The appointment, since 1791, has been made by joint resolution of both houses; up to that time, and even in the Court itself, no distinction is made between justices of the quorum and of the peace. Both are specified in the Act of 1799, but no distinction is made. It seems that in 1793, ’94, and ’95, justices of the quorum were appointed for the whole State, and of the peace for parishes and districts. Since that time, without exception, .the appointment by resolution has been made of each for districts, counties, and parishes. In the absence of any other evidence of the intention of the legislative body, or of any other clue to ascertain it, we must conclude that the joint resolution stands in the place of commission, and is the authority under which the justice acts; that, therefore, will indicate the extent of the *158 jurisdiction as effectually as the commission in England. And the appointment, by resolution, of AB, and CD, to be justices of quorum for St. Philips and St. Michaels, as effectually limits their power and authority to the boundaries of the parishes, as if they had by commission been assigned to keep the peace in and for the said parish ; and this view is greatly strengthened by reference to several Acts of the Legislature relative to justices of the peace. By the Act of 1799, before referred to, prescribing the term of service, it is enacted “ that when any former district shall have been divided into two or more districts, by an Act entitled an Act to establish an uniform system of judicature, passed in December, 1798, the justices of the peace appointed for the former districts, shall be, and they are hereby appointed, magistrates for the districts in which they reside.” As early as 1785, by the '‘Act for laying off the several counties therein mentioned, &c.,” it is enacted, “ where any road or navigable river is the dividing line between two counties, the justices of each county that shall be so divided shall exercise an equal jurisdiction over the said road or river: and the process and orders of each of the said justices, which shall be first executed thereupon, shall have jurisdiction sole and exclusive as to such other county,” &c. — plainly implying without such enactment, that the authority of each, after the division, would be limited to the boundary of the county within which the justice resided. Indeed the phraseology of all the Acts seem to regard the jurisdiction as local and limited. The Act of 1799 — " that there shall not, any time after the passing of this Act, be appointed to any parish, county, or district hereinafter named, any greater number of justices of the quorum or of the peace,” &c.: so the Act of 1821, increasing the number, is in same words — “there shall not be appointed to any parish, county, or district,” &c.: and so the Act of 1827, under which the appointments for this parish are made, is in similar words — “ that from and after the. passing of this Act, eight justices of the quorum shall be appointed for the parishes of St. Philips and St. Michaels, by joint resolution,” &c., possessing the ordinary criminal jurisdiction. In relation to the sphere of their operation, the territorial extent of the jurisdiction, there is no difference whatever between the justices of the quorum and of the *159 peace, and the conclusion is, that both are limited to the parish, county, or district, in and for which they are appointed. If appointed for a parish, there is no more reason for extending the sphere of their authority to the limits of the judicial districts, than there is for extending it to the limits of the State.
The decision of the Judge below is approved by the whole Court, and the motion to reverse it is refused.